USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/26/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES MCRAE,

              Plaintiff,

v.

EMPLOYEES OF DOCCS C.O.'S J. CORDERO,
M. DEJESUS, AND V. SMITH,

              Defendants.

15-CV-4334(NSR)(PED)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff James McRae ("Plaintiff") commenced this *pro se* action under 42 U.S.C. § 1983[1] on May 29, 2015, based on an incident that occurred during his incarceration at Sing Sing Correctional Facility. (*See* Complaint ("Compl."), ECF No. 2.) Plaintiff alleges that Correctional Officers J. Cordero ("Cordero"), M. DeJesus ("DeJesus") and V. Smith ("Smith") (collectively, "Defendants")[2] used excessive force in violation of the Eighth Amendment's ban on cruel and unusual punishment. (*See* Compl. at 4.)[3] Currently before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 for failure to exhaust administrative remedies. (ECF No. 44.) For the following reasons, Defendants' Motion is DENIED.

---

[1] The Court construes the complaint as asserting a claim under § 1983. Although the complaint makes no mention of that statute, Section 1983 is the typical "vehicle for remedying . . . constitutional violations." *Chan v. City of New York*, 1 F.3d 96, 103 (2d Cir. 1993).

[2] On June 7, 2017, this Court dismissed named Defendant Westchester County Department of Correction *sua sponte*. (*See* ECF No. 6.)

[3] As Plaintiff is proceeding *pro se* and his Complaint is the standard fillable form, all citations thereto will be to pages as identified by the roman numerals therein. Further, all citations to documents attached to the complaint will be referred to as lettered exhibits.

1

# I. BACKGROUND

The following facts are drawn from the Complaint and its attachments, the parties' submissions, and the record.

### a. The July 7th Incident

On July 7, 2014, Plaintiff enjoyed a visit from his brother while incarcerated at Sing Sing Correctional Facility ("Sing Sing"). (Compl. at 4; Compl., Ex. B, Inmate Misbehavior Report ("Misbehavior Report") 1, ECF No. 2.) While in the designated visiting area, Defendant DeJesus observed Plaintiff's brother hand Plaintiff what appeared to be a white or beige ball. (*Id*., Ex. C, Mem. to Sgt. Kasper from M. DeJesus ("DeJesus Mem") 3, ECF No. 2.) Plaintiff then placed the ball in his left pocket. (*Id*.) Defendant DeJesus notified Defendants Smith and Cordero, and the latter two attempted to remove Plaintiff from the visiting area. (*Id*.)

Defendant Cordero then instructed Plaintiff to place his hands on the wall in preparation for a frisk search, but Plaintiff instead placed his hand in his left pocket and began struggling with the Correction Officers. (*See id*., Ex. C, Mem. to J. McMorrow, Lieutenant, from J. Cordero, Correction Officer ("Cordero Mem.") 1, ECF No. 2.) In response, Cordero took Plaintiff to the ground and attempted to secure his arm to no avail. (*Id.*) Plaintiff subsequently place an unidentified object in his mouth. (*Id.*) Defendant Cordero then choked Plaintiff until he lost consciousness, resulting in broken blood vessels in Plaintiff's left eye. (*See* Compl. at 4; *see also* Cordero Mem. 1.) After Plaintiff regained consciousness, Defendants Cordero and Smith were able to regain control by forcing Plaintiff's wrists into the small of his back and applying mechanical restraints. (Cordero Mem. at 1; Compl. Ex. C., Mem. to E. Kasper, Sergeant from V. Smith, Correction Officer ("Smith Mem.") 2, ECF No. 2.) Defendants allegedly further beat Plaintiff in the "strip/frisk" area just outside the visiting room. (Compl. at 4.)

### b. Misbehavior Report and Hearing

On July 10, 2014, Correction Officer Taylor served Plaintiff with a misbehavior report in connection with the July 7 incident. (Misbehavior Report 1.) The report charged Plaintiff with violations of facility rules 100.11, Assault on Staff, 104.11, Violent Conduct, 106.10, Refusing a Direct Order, 114.10, Smuggling, 115.10, Violation of Search Procedures, and 180.10, Facility Visiting Violation. (*Id.*) The charges required a Tier III Hearing, which was held on or about July 23, 2014. (*See* Compl., Ex. B, Superintendent Hearing Disposition ("Superintendent Disposition") 1, ECF No. 2.) The hearing officer found Plaintiff guilty of every charge except 100.11, Assault on Staff. (*Id.* at 2.) Additionally, the hearing officer found Plaintiff guilty of violating Rule 113.24, Drug Use, after his urine sample tested positive for THC-50 Cannabinoids. (*Id.* at 1–2.) The hearing officer sentenced Plaintiff to two months in the Solitary Housing Unit ("SHU") and loss of other privileges during that time. (*Id.* at 2.)

### c. Grievance

Plaintiff alleges that he filed a grievance regarding the July 7 Incident on July 25, 2014, while housed in the SHU (Compl., Ex. A, Inmate Grievance Complaint ("Aug. 9 Letter") at 1, ECF No. 2; *See* Decl. of Neil Shevlin in Supp. of Def. Mot. ("Shevlin Decl."), Ex. A, Deposition of James McRae ("McRae Dep.") at 68:18–23, ECF No. 46.) After not receiving a response from the Inmate Grievance Resolution Committee ("IGRC"), Plaintiff filed a letter[4] on August 9, 2014

---

[4] While Defendants refer to the document filed August 9, 2014 as a correspondence, this Court understands that document to be both an inquiry into the July 25 Grievance, as well as a grievance concerning the superintendent's non-response in light of the language contained therein. Specifically, the title of the letter is "Inmate Grievance Complaint" and the first line of the letter states that "I am filing this grievance because on July 25th 2014 I filed a grievance Complaint" and "haven't received any kind of reply or acknowledgement." Complaints of this nature "may be submitted on plain paper" pursuant to 7 N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 7, §701.5(a)(1).

3

inquiring about the status of his July 25 Grievance. (Aug. 9 Letter at 1.) In a memorandum dated August 21, 2014, Inmate Grievance Program ("IGP") Supervisor Quandera Quick informed Plaintiff that there was no record of his July 25th Grievance. (Compl., Ex. A., Mem. to McRae, J, from Q. Quick, IGP Supervisor ("August 21 Mem.") 1, ECF No. 2.) It is unclear whether Plaintiff actually received Supervisor Quick's correspondence on August 21, 2014. (Def. Mem. in Supp. of Mot. to Dismiss ("Def. Mem.") 4–5, ECF No. 44.) Plaintiff allegedly attempted to appeal his grievance but the "IGRC Sup[ervisor]" stated his Office never received the grievance. (Compl. at 6.) He did not attempt to file another grievance following Supervisor Quick's Response. (McRae Dep. 72:1–8.)

## II.     LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Benn v. Kissane*, 510 F. App'x. 34, 36 (2d Cir. 2013) (summ. order).

Summary judgment is appropriate where a party who bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323 (internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted). However, the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Further, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

Typically, a "nonmoving party's failure to respond to a [Local Civil] Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (citing *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998)). "This general rule applies equally" to cases involving a *pro se* nonmoving party who has been provided adequate notice of the consequences of failing to properly respond to a summary judgment motion. *Pierre-Antoine v. City of N.Y.*, No. 04-cv-6987 (GEL), 2006 WL 1292076, at *3 (S.D.N.Y. May 9, 2006); *see Gilliam v. Trustees of Sheet Metal Workers' Nat'l Pension Fund,* No. 03-cv-7421 (KMK), 2005 WL 1026330, at *1 n.2 (S.D.N.Y. May 3, 2005). Nonetheless, the Court "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement," *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal citation and quotation marks omitted), and the Court is obligated to construe *pro se* litigants' submissions liberally, *see McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

## III. DISCUSSION

Defendants argue that Plaintiff failed to exhaust his administrative remedies with regards to the grievance allegedly filed in connection with the July 7 incident. (*See* Def. Mem. 7–12.) Specifically, Defendants contend that Plaintiff failed to exhaust his administrative remedies because Plaintiff could have (1) made a request to file a late grievance, (2) filed a separate grievance if that request was denied or (3) appealed the superintendent's failure to respond. The Court finds that although Plaintiff technically failed to exhaust his administrative remedies, any existing process to appeal his original grievance, in his circumstances, was prohibitively opaque.

### a. Exhaustion of Administrative Remedies

Inmate plaintiffs are required to exhaust their administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA") prior to initiating suit in federal court. *See* 42 U.S.C. § 1997e(a); *see also Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). "Exhaustion serves myriad purposes, including limiting judicial interference in agency affairs, conserving judicial resources, and . . . allow[ing] the agency to develop the factual record of the case." *Aikens v. Jones*, No. 12-CV-1023(PGG), 2015 WL 1262158, at *3 (S.D.N.Y. Mar. 19, 2015) (citation and internal quotations omitted).

"The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Failure to exhaust compels dismissal of federal claims. *Thomas v. Metropolitan Correction Center*, No. 09 Civ. 1769(PGG), 2010 WL 2507041, at *6 (S.D.N.Y. June 21, 2010) ("Where it is clear that an inmate did not exhaust his administrative remedies, the court must dismiss the action").

Nevertheless, a plaintiff's failure to exhaust does not end the Court's inquiry. *See Hemphill v New York*, 380 F.3d 680, 686, 690–91 (2d. Cir. 2004).[5]

In order to properly exhaust a grievance, "'a prisoner must grieve his complaint about prison conditions up through the highest level of administrative review' before filing suit." *See McCoy v. Goord*, 255 F. Supp. 2d 233, 246 (S.D.N.Y. 2003) (quoting *Porter v. Goord*, No. 01-CV-8996(NRB), 2002 WL 1402000, at *1 (S.D.N.Y. June 28, 2002)). Exhaustion of administrative remedies under the PLRA requires completion of the administrative appeal process in conformance with rules of the particular institution in which they are confined. *See Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012).

New York's grievance process, known as the Inmate Grievance Program, generally provides a three-tiered formal procedure for all grievances. *See Morrison v. Stefaniak*, 523 F. App'x. 51 (2d Cir. 2013) (summ. order); *Abdallah v. Ragner*, No. 12-CV-8840, 2013 WL 7118083, at *2 (S.D.N.Y. Nov. 22, 2013); *see also* 7 N.Y.C.R.R. § 701.5. Under the Inmate Grievance Program, an inmate must first submit a grievance detailing the incident, the actions requested, and the actions the inmate has taken to resolve the complaint within 21 days of the

---

[5] Where remedies were available, a court should inquire as to whether the Defendants may have forfeited the affirmative defense of non-exhaustion. *Kimbrough v. Fischer*, No. 13-CV-0100(FJS)(TWD), 2014 WL 12684106, at *7 (N.D.N.Y. Sept. 29, 2014). Defendants have not waived their right to assert failure to exhaust as an affirmative defense. Exhaustion defects may be overlooked where "defendants [] have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it" or where Defendants' "own actions inhibit[ed] the inmate's exhaustion of remedies." *Hemphill*, 380 F.3d at 686 (internal citations omitted). Neither situation is applicable here. Defendants' asserted failure to exhaust as an affirmative defense in their Answer. (*See* Answer ¶ 21, EFC No. 13.) Therefore, Defendants have not waived exhaustion as a defense. *See Villante v. VanDyke*, 93 F. App'x 307, 309 (2d Cir. 2004) (concluding that Defendants preserved exhaustion as a defense by raising it in their answer). Further, there is no indication in Plaintiff's Complaint that he was prevented from pursuing any administrative remedies by the Defendants own actions. Consequently, Defendants did not waive the defense of exhaustion.

alleged occurrence, to the Inmate Grievance Resolution Committee ("IGRC"). *See* 7 N.Y.C.R.R. § 701.5(a). Inmates may request exceptions to the time limit for filing grievances "based on mitigating circumstances," but no exception will be granted "if the request was made more than 45 days after an alleged occurrence." *Id.* § 701.6(g)(1)(i)(a).

As is the case here, when the allegations concern employee misconduct meant to harm an inmate, that grievance is considered a harassment grievance and follows an expedited procedure of review. Harassment grievances are sent directly to the Superintendent who must render a decision within 25 days of receipt of the grievance. *See id.* § 701.8(f). The grievant may appeal to the Central Office of Review Committee ("CORC") if the Superintendent fails to respond within 25 days or within 7 days of receipt of an otherwise unsatisfactory response. *Id.* §701.8 (g)–(h). Inmates who are in the SHU rely exclusively on area supervisors to provide them with forms and to subsequently collect and submit their grievances. *See id.* § 701.7 (a)–(c). "If this [complaint] form is not readily available, a complaint may be submitted on plain paper." *Id.* § 701.5(a)(1).

In this case, Plaintiff failed to exhaust the administrative remedies "technically" available to him. *See Williams*, 829 F.3d at 124. Plaintiff alleges that he filed a grievance regarding Defendants' alleged excessive force during the July 7 incident on July 25, 2014. (Aug. 9 Letter 1.) Grievances of that nature are considered harassment grievances, which require a response from the superintendent within 25 days of an inmate's submission, in this case by August 19, 2014. 7 N.Y.C.R.R. § 701.8(f). [6]

---

[6] Had the correction officer filed the grievance, it should have been forwarded to the superintendent that same day in accordance with procedures that govern the processing of harassment grievances. 7 NYC.RR § 701.8(b)

It is undisputed that in the days after the 25-day deadline expired, Plaintiff did not submit an appeal to CORC regarding the superintendent's failure to respond pursuant to 7 NYCRR § 701.8(g). (McRae Dep. at 71:10–22; Decl. of Shelley Mallozzi in Supp. of Def. Mot. ("Mallozzi Decl."), ¶4, Ex. A., Inmate Grievance Database Search Results, ECF No. 46.) Consequently, Plaintiff did not exhaust the technically available administrative remedy at the time he commenced the instant action. *See Garvin v. Rivera,* No. 13-CV-7054 (RJS), 2015 WL 876464, at *4 (S.D.N.Y. Feb. 28, 2015) ("Courts in [the Second Circuit] have consistently held that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies").

### b. Availability of Administrative Remedies

Failure to exhaust a technically available administrative remedy, however, does not end the inquiry. The record indicates that just days after the appeal to CORC could be pursued, IGP Supervisor Quick wrote a letter dated August 21, 2014, informing Plaintiff that his July 7 grievance was never received. (August 21 Mem. at 1.) Plaintiff contends that this revelation rendered any available process to appeal prohibitively opaque because the regulations plainly do not describe a mechanism for appealing an unfiled grievance. (Pl. Mem. of Law in Opp. ("Pl. Opp.") 3, ECF No. 49.) Defendants argue that Plaintiff's failure to exhaust cannot be excused because the unexhausted remedies remained functionally "available" to Plaintiff as defined by *Ross v. Blake*, 136 S. Ct. 1850 (2016). (*See* Def. Mem. at 7–12).

"[T]he exhaustion requirement hinges on the availability of administrative remedies[.]" *Ross*, 136 S. Ct. at 1858 (internal quotations omitted). In the context of the PLRA, "'availability' means that 'an inmate is required to exhaust . . . only those[] grievance procedures that are capable of use to obtain some relief for the action complained of.'" *Thomas v.*

9

*Kinderman*, 17-cv-00425 (DNH/TWD), 2017 WL 8293605, at *4 (N.D.N.Y. Dec. 4, 2017) (quoting *Ross*, 136 S. Ct. at 1859). In *Ross*, the Supreme Court explained that an administrative remedy, though it exists formally, is functionally unavailable in three situations: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief"; (2) when an "administrative scheme might be so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it"; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1859-60. These circumstances "will not often arise. But when one (or more) does, an inmate's duty to exhaust 'available' remedies does not come into play." *Id*. at 1859 (internal citation and quotations omitted).

Shortly after the *Ross* decision, the Second Circuit applied the *Ross* availability analysis in *Williams v. Priatno*, 829 F.3d 118 (2d Cir. 2016), and determined that, the process to appeal an unfiled grievance was prohibitively opaque because "the regulations plainly do not describe a mechanism for appealing a grievance that was never filed." *See Williams*, 829 F.3d at 125–26. Specifically, the plaintiff in *Williams* alleged that he drafted a grievance about officer misconduct while in SHU confinement and gave it to a corrections officer to file on his behalf. *Id.* at 120. One week later, Williams told the superintendent about the incident and informed her he had not yet received a response to his grievance. *Id*. at 121. The superintendent told the Plaintiff that she was unaware of any grievance, but that she would look into it. *Id*. About a week after that conversation with the Superintendent, Williams was transferred to another facility. *Id*. After the superintendent failed to respond to Williams' grievance, Williams alleged that the correction officer in the SHU never filed it for him. *Id*. The Second Circuit found that "[t]he

regulations simply do not contemplate the situation in which Williams found himself"—namely attempting to appeal an unfiled grievance—"making it practically impossible for him to ascertain whether and how he could pursue his grievance." *Williams*, 829 F.3d at 124.[7]

At the heart of the Second Circuit's analysis was the inescapable quandary that inmates find themselves in when their grievances are not filed—namely, that current regulations do not guarantee recourse for an inmate whose grievance was never filed. In *Williams*, the Court interpreted the same regulations as the instant case: An inmate has 21 days from an event to file a grievance, and when that grievance is a "harassment grievance" the Superintendent must respond within 25 days of its filing. Further, an inmate has a total of 45 days from the underlying incident to ask for an extension of time to file a grievance, however, an extension cannot be granted if requested after the 45 day period following the incident. The Defendants in *Williams* assured the Court that if Williams had attempted to appeal the non-response of his grievance, it would have allowed the facility to alert the inmate that his complaint had not been received. *Id.* at 124. Defendants there argued that Williams could have pursued three options to exhaust his remedies. The Second Circuit was thoroughly unconvinced.

First, Defendants argued that if it is still within 21 days of the incident, the inmate can re-file the complaint. This option was unworkable because an inmate does not have the right to appeal a grievance to the next step until the time for the Superintendent to respond passes, which is beyond the 21 days of the incident in the case of harassment grievances. Second, Defendants posited that if it is beyond 21 days but within 45 days of the incident, the inmate can request an exception to the 21–day time limit if he can show mitigating circumstances. This option was

---

[7] The Court notes that "[the fact] that *Williams* was decided on a motion to dismiss and not on a summary judgment motion does not change the analysis." *Medina v. Napoli*, 725 F. App'x 51, 54 (2d Cir. 2018) (summ order).

likewise unconvincing because if an inmate took full advantage of their time to submit a complaint, and then had to wait 25 days for a response, 46 days will have passed before he learns that the Superintendent failed to respond, placing him outside of the time limit to request an extension. *Id.* Similarly if an inmate files prior to the 21 day limit, the time period to hear back from his appeal of the nonresponse is unregulated, thus, potentially leaving an inmate with no recourse even after appealing the Superintendent's failure to respond. *Id.* at 125 n.5. Third, Defendants argued that if it is more than 45 days since the incident, the inmate may file a separate complaint grieving the denial of an extension to the time limit. This last option was also unconvincing because the regulations state than an exception to the time limit may not be granted if the request was made more than 45 days after an alleged occurrence. *Id.* at 125–26.[8]

The instant case shares many factual similarities with *Williams*, the most substantive being the lack of a regulation governing the process for appealing unfiled grievances. Plaintiff also allegedly timely filed his grievance regarding the July 7 incident on July 25, 2014. (Aug. 9 Letter at 1; McRae Dep. 68:18–21.) Fifteen days after filing his July 25 letter grievance, Plaintiff sent a letter to IGRC inquiring about the status of his grievance. A letter dated August 21, 2013, notified Plaintiff that there was no record of his grievance, although the receipt date is unknown. (August 21 Mem. at 1; Def. Mem. at 10–11.) Consequently, Plaintiff found himself in the exact procedural morass contemplated in Williams. If he waited the 25 days to hear from the Superintendent, Plaintiff would not be able to re-file his grievance because 21 days since the incident lapsed. Further, once 25 days passed following his initial purported filing, a request for

---

[8] It bears noting that *Williams* explicitly dealt with the argument that if the current applicable regulations are truly opaque, any inmate who claims that he submitted a grievance that was unfiled and unanswered could be excused from compliance with the PLRA's exhaustion requirement. As the Second Circuit noted, Defendants, as is the case here, did not meet "the initial burden of establishing the affirmative defense of non-exhaustion 'by pointing to 'legally sufficient sources' such as statutes, regulations, or grievance procedures' which demonstrate that 'a grievance process exists and applies to the underlying dispute.'" *Williams*, 829 F.3d at 126 n.6 (quoting *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir.2015)).

an extension is not guaranteed. As the Second Circuit noted, no explicit process exists for being alerted that the original grievance was not filed within the 45 day extension period when an inmate appeals a non-response. Even when an inmate appeals the Superintendent's non-response, and receives a response, that response may come at a day outside of the 45-day period. Therefore, the standard appeals process became unavailable because the grievance procedures were not capable of use to obtain some relief for the action complained of since the grievance was unfiled. *See Ross*, 136 S. Ct. at 1859. Specifically, since the grievance was never filed, as in *Williams*, the timeline for the superintendent to respond was never triggered by the filing of a grievance and, "[i]n turn, the textual provision allowing a grievant to appeal to the CORC would never have come into effect." *Williams*, 829 F.3d at 124 (2d Cir. 2016); 7 NYCRR § 701.8(g). In such a situation, "the regulations give no guidance whatsoever to an inmate whose grievance was never filed," *Williams*, 829 F.3d at 124, thus, rendering the administrative scheme "incapable of use." *Ross*, 136 S. Ct. at 1859.

Defendants, however, attempt to distinguish *Williams* from the case at hand on various grounds that merit attention. First, Defendants posit that if Plaintiff learned his July 25 grievance was not filed on August 25—exactly 45 days from the July 7 incident—that Plaintiff could have requested an extension to file a new grievance, or alternatively filed a separate grievance if said request was denied. (Def. Mem. at 4–5, 10–11.) However, Defendants concede that it is unclear when Plaintiff actually received IGP Supervisor Quick's Memorandum dated August 21, 2015. (*See id.* at 10–11.) In light of 7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)'s explicit language that "[a]n exception to the time limit may not be granted if the request was made more than 45 days after

an alleged occurrence" the record fails to indicate whether this remedy was technically available under the circumstances. Therefore, this defense fails at this juncture.[9]

Alternatively, Defendants contend that even if Plaintiff became aware that his July 25 Grievance was unfiled after the 45 day window expired, he still could have requested his August 9 letter, filed within the 45 day time frame, be considered as a late grievance. (See Def. Mem. at 5.) This argument is unavailing because the August 9 letter was a grievance filed regarding the

---

[9] The question of whether Plaintiff could have simply asked for an extension of time in the event he found out about the status of his unfiled grievance within 45 days of the underlying incident is not squarely before the Court because neither the record nor the parties identify when Plaintiff received IGP Supervisor Quick's letter dated August 21, 2014. It bears noting that in the aftermath of *Williams*, courts have been left to identify the decision's exact parameters. What is clear from the decision is that the current regulations are opaque if an inmate finds out 46 days after the underlying incident that his grievance was not filed. In that situation, an inmate has absolutely no recourse. Moreover, in *Williams*, the Court takes issue with Defendant's position that had he "attempted to appeal his grievance, it would have allowe[d] the facility to alert the inmate that his original complaint ha[d] not been received . . ." 829 F.3d at 124. This argument, and the Second Circuit's rejection of it, assumes that Plaintiff had no knowledge that his grievance was filed until after the 45 day limit expired, and consequently, no other regulation would have afforded Plaintiff the opportunity to properly file his grievance. *See id.* at 125 n.5.

What is unclear, and an important open question, is whether *Williams* only condemned the specific situation where a grievant finds out after the 45 day time limit lapsed that their grievance was not filed, or whether the Opinion speaks to the general obscurity of the procedures concerning unfiled grievances. The logic buttressing *Williams*' direct holding seemingly applies to inmates who learn within 45 days of the underlying incident that their grievances were not filed. Inmates who attempt to file their grievances and find out, through their own diligence or otherwise, within 45 days of the underlying incident that their grievances were not filed may technically ask for an extension of time. However, *Williams* appears to condemn the lack of regulations covering those situations. Indeed, *Williams* explicitly rejects the contention that Plaintiff was required to appeal because there was no guarantee that he would find out about the status of his grievance within the 45-day period. *Id.* at 124–25.

The Second Circuit also disapproved of Defendant's attempt at piecing together an inmate's options "from various provisions in the regulations that do not involve appeals of grievances but provide instructions on the timeliness that apply to the filing of new complaints." *Id.* at 125. Similarly here, Defendants argue that an inmate must discern from a regulation governing the filing of new complaints that they should request an extension to file a second complaint. "The regulations simply do not contemplate," *Id.* at 124, a situation in which a grievant finds out that their grievance was not filed, thus potentially creating a regulatory scheme that is "'practically speaking, incapable of use.'" *Id.* at 123 (quoting *Ross*, 136 S. Ct. at 1859).

superintendent's non-response and not the substance of his claim. *See supra*, n.4. Furthermore, nothing in the applicable regulations indicates that inmates may retroactively request an exception to the time limit under these circumstances, wherein said request occurs after the 45 day window expired. *See* 7 N.Y.C.R.R. § 701.6(g); *C.F. Hamlet v. Stotler*, No. 17-CV-939 (GLS) (TWD), 2018 WL 2729263, at *8 (N.D.N.Y. Apr. 27, 2018*), report and recommendation adopted sub nom. Hamlett v. Stotler*, No. 9-17-CV-939 (GLS) (TWD), 2018 WL 2727875, at *8 (N.D.N.Y. June 6, 2018) (finding there was nothing in the summary judgment record suggesting that had Plaintiff filed the grievances after the 21 day time limit and 45 day extension period, that the facility would not have rejected those grievances as untimely).

Defendants further contend that the instant case is distinguishable from *Williams* in that Plaintiff remained at Sing Sing for a number of months after he allegedly filed his July 7 Grievance, whereas the Plaintiff in *Williams* was transferred to another facility shortly after he allegedly filed his grievance. (*See* Def. Mem. at 11–12; Defendants' Reply Mem. of Law in Further Supp. ("Def. Reply") 3–4, ECF No. 50.) *Williams*, 829 F.3d at 121. That fact, however, was not determinant in *Williams*. The Court specifically noted that "if the regulations . . . were not already so confusing that no ordinary prisoner can discern or navigate [them], their obscurity was compounded by the fact that Williams was transferred to another facility approximately two weeks after giving his grievance to the correction officer." *Id.* at 126 (internal citation and quotations omitted).

Thus, Plaintiff's action is not barred by the PLRA exhaustion requirement. *Ceara v. DOCCS Officer Joseph Deacon*, No. 13-CV-6023 (KMK), 2017 WL 363003, at *7 (S.D.N.Y. Jan. 23, 2017) (finding the PLRA did not bar Plaintiff's action where "the regulatory scheme providing for that appeal [was] so opaque and so confusing that . . . no reasonable prisoner

[could] use it") (internal citations and quotation marks omitted). The Second Circuit explicitly recommended DOCCS to revise its grievance procedures in anticipation of the situation before the Court today. Their failure leaves this Court no other recourse.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is DENIED. The Clerk of the Court is respectfully requested to terminate the motion ECF No. 44, mail a copy of this Opinion to the Plaintiff, and file proof of service on the docket.

The parties are directed to appear for an in-person Pre-Trial Conference on September 20, 2018 at 11:30 A.M., at the Charles L. Brieant United States Courthouse, 300 Quarropas Street, White Plains, NY 10601, Courtroom 218. Due to *pro se* Plaintiff's incarceration, Defendants are directed to arrange Plaintiff's telephonic participation at the aforementioned time and date.

Dated: July 26, 2018
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge